### BROADWAY BLDG. CO. v. FERGUSSON et al.

(Supreme Court, Appellate Term.   May 7, 1909.)

**1. LANDLORD AND TENANT (§ 115*)—LEASES—CONSTRUCTION—TENANCY FROM MONTH TO MONTH.**

Where, after tenants had leased a suite of rooms in a building, the landlord agreed with them that they should exchange the suite selected for one of two others as soon as another tenant had made selection between them, and that meanwhile they should temporarily occupy a different suite, the agreement did not bind them to remain in the suite temporarily furnished more than a reasonable time, and, they having paid a monthly rental in advance, their tenancy was at most a tenancy from month to month.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 391–394;  Dec. Dig. § 115.*]

**2. LANDLORD AND TENANT (§ 116*)—TENANCY FROM MONTH TO MONTH—NOTICE TO TERMINATE.**

A notice necessary to terminate a tenancy from month to month is one given within a reasonable time, and a notice given on July 21st by actually moving out was sufficient to terminate the tenancy on August 1st.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 396–398;  Dec. Dig. § 116.*]

Appeal from Municipal Court, Borough of Manhattan, First District.

Consolidated actions by the Broadway Building Company against Samuel W. Fergusson and another.  Judgment for plaintiff in each case, and defendants appeal.  Judgments reversed, and complaints dismissed.

Argued before GILDERSLEEVE, P. J., and DAYTON and GOFF, JJ.

Walter H. Thatcher, for appellants.
Andrew Gilhooly, for respondent.

PER CURIAM.  These two actions, which were tried together, are for two separate installments of rent for the months of August and September, 1908, respectively.  There is no dispute concerning the principal facts.  By a lease between the parties, made April 13, 1908, the defendants agreed to rent from the plaintiff the suite of offices known as 506 in defendants' building, No. 170 Broadway, New York City, for one year from May 1, 1908, at the agreed price of $1,500 per annum, payable in equal monthly payments in advance.  Possession of this suite was never given to defendants.  The president of the plaintiff corporation, finding that he could rent that suite (506) to a prospective tenant who would have that or nothing else in the build-

ing, asked the defendants if they would take in its stead either suite 1306 or 1706, both of which were similar in location, arrangement of rooms, and outlook, being on higher floors of the building. Suite 1306 was at the time occupied by a tenant named Fraser, to whom the plaintiff desired to give the option to remain therein or to take 1706 instead. By a verbal agreement between the defendant Fergusson and the plaintiff an arrangement was made that, pending Fraser's decision, the defendants were to occupy suite 1707–1708 at the same rental as called for in the lease. This arrangement was carried out, and defendants occupied the last-named rooms for a portion of the month of May, paying $30 therefor, and continued therein up to July 21, 1908, paying on the 1st of June and on the 1st of July $125 monthly in advance in accordance with the terms of the written lease for suite 506 and the oral modification above mentioned, which was evidenced by the following letter:

"New York, May 13, 1908.

"Broadway Building Company, 170 Broadway, New York—Dear Sirs: Referring to our lease with you of suite 506, we would prefer taking the same suite higher up, and, as we understand there is possibility of getting either suite 1706 (with windows the same as 506) or 1306, pending such, we are quite willing to occupy suite 1707–1708.

"Yours truly,                        · S. W. Fergusson.
                                "Henry Ide Willey,
                                        "By S. W. Ferguson."

As is shown above, this "pending such" was understood to mean pending the decision of the tenant Fraser as to which of the two suites, 1306 or 1706, he preferred, the defendants to have the other; and plaintiff's president, Browne, specifically so stated on the trial as follows:

"We now had got possession of 1706, and we offered it to Mr. Fraser, and that, if Mr. Fraser refused to take 1706, instead of 1306, then the Colonel could have 1706; on the understanding that he could have his choice, I mean, at our option, depending on Mr. Fraser's decision, he was to have either 1306 or 1706, and to occupy, pending that decision, rooms 1707 and 1708 at the same rental."

Mr. Browne was asked on cross-examination:

"Q. When, if ever, did this tenant, Fraser, decide as to what course he would take in regard to remaining in 1306 or taking 1706? A. Notwithstanding the endeavors we made to get him to make a decision, he has not yet made a decision."

This was on January 7th, 1909. It further appears that the defendants were continually demanding possession of the suite promised them, and finally they got tired of waiting for Fraser to make up his mind and moved out. Willey stated that he remembered handing Mr. Rowley a check for the rent and saying:

"This is the last one, and we are going out, because of the fact that you have not within five or six days, or within five or six weeks, furnished us with the apartments that we rented and you promised us."

A letter from Mr. Browne under date of July 20, 1908, to the defendants, gave the tenants permission to use the elevators at 5 o'clock in the evening of that day for removing their furniture and effects.

and contained a notification that the plaintiff would insist upon "your lease with us expiring May 1, 1909, and that the same is to continue in full force and effect." The tenants moved the following day, July 21, 1908. Upon the foregoing facts the learned trial justice gave judgment in both actions for plaintiff.

It was the plaintiff's contention that the oral arrangement bound the defendants to occupy and pay for rooms, which were not within the contemplation of the parties and not such as they desired, until such time as the tenant, Fraser, should decide whether he would take 1706 or remain in 1306, even if he did not decide for the whole term for which the lease of 506 to the defendants was made. On his brief plaintiff contends that, because the oral contract was for an indefinite term, a month's notice must have been given to terminate it. But that does not justify, even if correct, which it is not, the judgment for the September rent, since actual moving on July 21st is at least a month's notice of an intention to abandon on September 1st.

Neither of the above contentions is sound. The arrangement to occupy 1707–1708 pending Fraser's decision could not be construed to bind the defendants to remain in those rooms more than a reasonable time; and at the most, inasmuch as they paid while in possession of those rooms a monthly rental in advance, their tenancy cannot be regarded as for more than from month to month. The notice necessary to terminate such a tenancy is one given within a reasonable time, and 10 days' notice has been frequently held to be sufficient under such circumstances. The tenants were within their rights in moving, and the judgments in both actions must be reversed, and the complaints dismissed, with costs.

Judgments in both actions reversed, and the complaints dismissed. with costs to the appellants in this court and in the court below.